# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Brenda Colvin, | Case No. 20-CV-0639 (DSD/HB) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Hennepin County Attorney's Office et al., | |
| Defendants. | |

This action comes before the Court on Plaintiff Brenda Colvin's (1) filing titled "Petition," ECF No. 1 ("Complaint); and (2) Application to Proceed in District Court Without Prepaying Fees or Costs, ECF No. 2 ("IFP Application"). For the following reasons, the Court recommends dismissing this action and denying the IFP Application as moot.

## I.   BACKGROUND

Colvin filed the Complaint on March 2, 2020. *See* Compl. 1.[1] The Complaint explicitly names as Defendants the Hennepin County Attorney's Office, "Hennepin County Child Protection" (presumably referring to Hennepin County Child Protection Services), and "The City of Plymouth on behalf of the Plymouth Police Department." *Id.* Colvin also lists several "liable public employees": Michael O. Freeman, Melissa

---

[1] References to cited filings use the page numbers provided by the Court's CM/ECF filing system.

Jacobsen, Claire Neissen-Derry, Kelly Syring, Rachel Levine, Linda Higgins, Michael K. Browne, DeChristopher Granger, and Glenn Gerard.[2]  *Id.*  The Court construes the Complaint as naming these individuals—who all appear to be associated with an explicitly named Defendant—as Defendants themselves.  *See id.* (listing entities that "liable public employees" work for).[3]

Difficult to follow, the Complaint purports to bring claims against Defendants based on violations of federal constitutional law, Minnesota state law, and numerous international-law sources.  *See id.* at 2–3.

### A.   Defendants Gerard, City of Plymouth, and Plymouth Police Department

The Complaint begins with allegations concerning the City of Plymouth and the Plymouth Police Department ("PPD").  *See id.* at 5–8.  Colvin alleges that Gerard—a Plymouth police officer—removed Colvin's children from her home in March 2019, citing "hazardous environmental conditions."  *Id.* at 5.  She appears to suggest Gerard did this without a warrant.  *See id.* at 7.  The children "were then placed in the custody of" Hennepin County Child Protection Services ("HCCPS").  *Id.*  Colvin asked Gerard to

---

[2]  The Complaint's first page refers to a "Glenn Gerads," but this appears to be a mistaken attempt to name Gerard, who is discussed elsewhere in the Complaint.  *Compare* Compl. 1 *with id.* at 5–8.

[3]  The exception is DeChristopher Granger.  The Complaint states that Granger works for the "Office of Police Conduct Review" ("OPCR") but says nothing more about him (or about the OPCR itself).  As discussed in more detail below, *see* section II.C *infra*, the Court recommends dismissing Granger from this action because Colvin alleges no wrongdoing on his part.  The Court thus need not address whether Colvin meant to name the OPCR or a related municipal entity as a defendant.

"place[] [her children] in the care of a family friend," but he purportedly denied that request. *Id.* at 5–6. Colvin also alleges that Gerard is "liable" for HCCPS drafting a "petition" depriving her of parental rights. *Id.* at 6.

By the Court's count, Colvin claims that Gerard's conduct violated the Fourth, Sixth, and Fourteenth Amendments of the U.S. Constitution; Minn. Stat. § 260.175, subd. 2; and various U.N. treaties. *See id.* at 5–7, 9. (She purports to bring her constitutional claims under 42 U.S.C. § 1983, *see, e.g.*, *id.* at 5, but does not identify the capacity in which she is suing Gerard.) Colvin also appears to suggest that Minn. Stat. § 260C.175 itself violates the Sixth and Fourteenth Amendments. *See id.* at 6–7. Finally, Colvin also seems to allege that the City of Plymouth failed to appropriately train Gerard in how to enforce Minn. Stat. § 260.175, subd. 2. *See id.* at 7–8.

The relief that Colvin requests from these Defendants includes: (1) a demand that they publicly denounce "the United States' seat held within the United Nations" (based on the alleged violations of international law); (2) an order that they comply with a state affirmative-action plan; (3) damages; and (4) attorneys' fees. *Id.* at 8–11.

### B. Defendants HCCPS, Claire Neissen-Derry, Kelli Syring, and Rachel Levine

In the Complaint's HCCPS-related allegations, Colvin states that Claire Neissen-Derry, an HCCPS investigator, "petitioned a summons" against Colvin for violating Minn. Stat. § 260C.007, subd. 6, and took Colvin's children from her custody. *See id.* at

3

11–12.[4]  According to Colvin, Neissen-Derry removed Colvin's children even though "she was told about [the PPD] needing to place Colvin's [c]hildren with the parental choice of guardian."  *Id.* at 12.  Colvin also asserts that Neissen-Derry's petition included false information and defamed Colvin.  *See id.* at 13.  Colvin contends that Neissen-Derry's conduct violated her (Colvin's) rights under the Sixth Amendment and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.  *See id.*  The Court also construes Colvin as also asserting a defamation cause of action against Neissen-Derry.

The Complaint also makes various allegations about Kelli Syring, another HCCPS employee.  *See id.* at 14–15.  As the Court understands it, Colvin alleges that Syring denied Colvin access to certain services (primarily financial assistance) while knowing that other individuals were violating Colvin's purported right to have her children placed with a family friend.  *See id.*  Syring also purportedly started a termination-of-parental-rights action against Colvin under Minn. Stat. § 260C.301; Colvin claims that this violated her rights under the Fourth and Fourteenth Amendments.  *See id.*  Colvin states that Syring had various medical tests and evaluations done on her children without having Colvin's "permission . . . for the necessary releases," again in violation of the Fourth and Fourteenth Amendments.  *Id.* at 15.  Finally, Colvin alleges that Syring falsely

---

[4]  Minn. Stat. § 260C.007, subd. 6, does not itself bar any conduct; rather, it simply defines the term "child in need of protective services."  The Court thus assumes that Colvin's point here is that Neissen-Derry took custody of Colvin's children after determining that they qualified as children in need of protective services.

4

told her (Colvin) that some unspecified "plan" involving Colvin and HCCPS was voluntary. *Id.*

Colvin's final set of HCCPS-related allegations concerns Rachel Levine. *See id.* at 15–16. Levine purportedly "allowed" Colvin's children "to be trafficked to multiple homes without forewarning, permission, or acknowledgement to" Colvin, thus violating the Sixth and Fourteenth Amendments as well as Minnesota state law. *Id.* Colvin also asserts that Levine permits Colvin's oldest child "to not attend" court-ordered visitation sessions with Colvin, again violating Minnesota law as well as the Sixth and Fourteenth Amendments. *See id.* at 16. Colvin claims that Levine "denied [Colvin] accessible and affordable housing in another State," again in violation of her Sixth and Fourteenth Amendment rights and Minnesota state law. *Id.* Finally, Colvin alleges that at one point, Levine "presented" one of Colvin's children "with a scratch on his face with no comment, care, or concern." *Id.* Colvin alleges that this violates Minnesota state law concerning the reporting of maltreatment or injury of a child. *See id.*

Colvin's request for relief from these Defendants includes: (1) a demand that they publicly denounce "the United States' seat held within the United Nations" (based on the alleged violations of U.N. treaties); (2) an order that HCCPS "show proof of being a non-discriminatory agency"; (3) damages; and (4) attorneys' fees. *Id.* at 18–21.

### C. Defendants HCAO, Freeman, and Jacobsen

Colvin's final set of allegations concerns conduct by individuals affiliated with the HCAO—specifically Michael Freeman (the Hennepin County Attorney) and Michelle Jacobsen (an attorney within the HCAO). *See id.* at 21–28. Colvin alleges that Freeman

5

and Jacobsen "prosecut[ed] her with inadmissible evidence," caused a denial of her "parental rights," and violated her rights under the Fourth and Fourteenth Amendments by "searching" Colvin's home and "seizing" Colvin's children. *See id.* She also states that they falsely accused her of drug use and refuse to let her have ongoing contact with her children. *See id.* at 23, 26.

While her allegations are not entirely clear, it appears that Colvin also argues that Freeman and Jacobsen refused to hold fair investigations of (1) allegations that several of Colvin's children were sexually abused and (2) complaints of the childrens' truancy. *Id.* at 22–23. She also suggests that Freeman and Jacobsen inappropriately moved Colvin's children to various shelters and foster-care homes without informing Colvin. *Id.* at 24, 26. She also claims that Freeman and Jacobsen inappropriately permitted Colvin's children "to be taken to medical appointments" and "have surgeries" without having proper releases. *Id.* at 25. She suggests that this conduct violated various Minnesota state laws and federal constitutional rights.

For HCAO-related relief, Colvin asks the Court to order the HCAO to "denounce" the United States's U.N. seat and for the relevant Defendants to pay Colvin damages and attorney fees. *Id.* at 29–32.

## II. ANALYSIS

### A. Screening Standards

Rather than pay this action's filing fee upfront, Colvin moved for permission to proceed IFP. *See* IFP Appl. After reviewing the IFP Application, the Court concludes that Colvin qualifies financially for IFP status. But an IFP application will be denied—

6

and an action dismissed—when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *Atkinson v. Bohn*, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); *Carter v. Schafer*, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[C]ontrary to plaintiffs' arguments on appeal, the provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service." (citing authorities)).

In reviewing whether a complaint states a claim on which relief may be granted, this Court must accept as true all of the complaint's factual allegations and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008). The complaint's factual allegations need not be detailed, but must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. In assessing a complaint's sufficiency, a court may disregard legal conclusions that are couched as factual allegations. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pro se complaints are to be construed liberally, but they still must allege sufficient facts to support the claims advanced. *See, e.g.*, *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004).

    **B.**    **International-Law Claims**

As noted above, Colvin suggests that numerous international treaties and United Nations resolutions give rise to some of her claims. This raises the question of whether U.S. district courts can adjudicate claims based on these international-law sources.

Simply put, for the treaties and resolutions that Colvin cites, the answer is no. The problems fall into various areas, but collectively, they strike all the documents Colvin relies on in the Complaint. First, several sources that Colvin cites are simply resolutions adopted by the U.N. General Assembly—that is, they are not formal treaties that the United States has itself ratified. *See* G.A. Res. 53/144, Decl. on the Right & Responsibility of Individuals, Groups, and Organs of Soc'y to Promote & Protect Universally Recognized Human Rights and Fundamental Freedoms (Mar. 8, 1999); G.A. Res. 34/169, Code of Conduct for Law Enforcement Officials (Dec. 17, 1979); G.A. Res. 217 (III), Universal Decl. of Human Rights (Dec. 10, 1948). It is well established that General Assembly resolutions are not binding international law. *See*, *e.g.*, *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 259 (2d Cir. 2003); *Siderman de Blake v. Republic of Argentina*, 965 F.2d 699, 719 (9th Cir. 1992). As a result, they do not provide U.S. citizens a private right of action.

Second, even where Colvin cites actual treaties, some have never been ratified by the United States. *See* Inter-American Convention on the Prevention, Punishment, and Eradication of Violence Against Women, *opened for signature* June 9, 1994, 33 I.L.M. 1534; Convention on the Rights of the Child, *opened for signature* Nov. 20, 1989, 1577 U.N.T.S. 3; Convention on the Elimination of All Forms of Discrimination Against Women, *opened for signature* Dec. 18, 1979, 1249 U.N.T.S. 13.; Int'l Covenant on Economic, Social, and Cultural Rights, *opened for signature* Dec. 16, 1966, 999 U.N.T.S 3; Inter-American Convention on the Granting of Civil Rights to Women, *opened for*

*signature* Mar. 30, 1948, 1438 U.N.T.S. 51.  As a result, these too cannot plausibly provide U.S. citizens a private right of action.

Third, for two treaties Colvin identifies that the United States has ratified, it did so on the understanding that they were not "self-executing"—that is, they specifically did not create private rights of action enforceable in U.S. courts.  *See* Int'l Covenant on Civil and Political Rights, *opened for signature* Dec. 16, 1966, T.I.A.S. 92-908, 999 U.N.T.S. 171; Int'l Convention on the Elimination of All Forms of Racial Discrimination, *opened for signature* Mar. 7, 1966, T.I.A.S. 94-1120, 660 U.N.T.S. 195.

Finally, Colvin cites two U.S.-ratified treaties for which the United States said nothing about self-execution: the Inter-American Convention on the Granting of Political Rights to Women, *opened for signature* Mar. 30, 1948, 27 U.S.T. 3301, 1438 U.N.T.S. 63, and the Convention on the Nationality of Women, *opened for signature* Dec. 26, 1933, 49 Stat. 2957, T.S. 875.  Even here, however, the Court concludes that these treaties do not give private citizens a right of action.  To the Court's knowledge, the Eighth Circuit has not analyzed how to determine whether a treaty creates private rights of action when the United States ratified it without mentioning self-execution.  But the Court finds persuasive a discussion by the U.S. Court of Appeals for the D.C. Circuit. In *Committee of U.S. Citizens Living in Nicaragua v. Reagan*, the D.C. Circuit addressed claims by private citizens purporting to sue under Article 94 of the United Nations's charter.  859 F.2d 929, 937–38 (D.C. Cir. 1988).  The court reasoned: "Treaty clauses must confer [rights on private individuals] in order for individuals to assert a claim 'arising under' them."  *Id.* at 937.  To decide if a treaty confers such rights, "'courts look

to the intent of the signatory parties as manifested by the language of the instrument.'" *Id.* (quoting *Diggs v. Richardson*, 555 F.2d 848, 851 (D.C. Cir. 1976)).

Following this guidance, the Court has reviewed the text of the Inter-American Convention on the Granting of Political Rights to Women and the Convention on the Nationality of Women.  Neither contains language that suggests that the signatories meant to create any private right of action within the domestic courts of the signing countries.  For these treaties as well, then, Colvin lacks a private right of action.

For all of these reasons, the Court concludes that Colvin lacks a private right of action to enforce any of international-law sources cited in the Complaint.  The Court therefore recommends that any claims in the Complaint based on international law be dismissed.  Furthermore, the Court recommends dismissing these claims with prejudice.  Because the relevant materials do not provide a private right of action, Colvin cannot fix the claims through repleading.

### C.     Claims Regarding Defendants Browne and DeGranger

The Court next addresses the Complaint's claims against Defendants Michael K. Browne and DeChristopher Granger.  Aside from naming these two individuals as Defendants, the Complaint contains no substantive allegations about them.  This raises the question of whether Colvin's claims against these Defendants are frivolous.

The U.S. Supreme Court has recognized that a complaint is frivolous when "it lacks an arguable basis in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *see also Day v. Minnesota*, No. 19-CV-0496 (WMW/LIB), 2019 WL 3371132, at *2 (D. Minn. July 26, 2019) (quoting *Neitzke*).  If a complaint lacks any allegations

10

explaining what a defendant did that could generate legal liability, then as to that defendant, the complaint lacks an arguable basis in fact. *See, e.g.*, *Radabaugh v. Corp. Tr. Co.*, No. 17-CV-1559 (JRT/BRT), 2017 WL 8944024, at *4 (D. Minn. May 22, 2017), *R. & R. adopted*, 2017 WL 4023102 (D. Minn. Sept. 13, 2017).

Given the Complaint's lack of allegations about Browne and DeGranger, this is precisely the situation we have here.[5] The Complaint simply has no substantive factual allegations about either Defendant. The Complaint is therefore frivolous as to those Defendants. The Court therefore recommends that the Complaint claims against Browne and DeGranger be dismissed without prejudice, and that both Defendants be dismissed from this action.

### D. Section 1983 Claims Regarding HCAO, HCCPS, and PPD

The Court next turns to Colvin's inclusion of the HCAO, HCCPS, and PPD as Defendants.[6] With respect to the HCAO and HCCPS, county agencies are not suable persons under § 1983. *See, e.g.*, *De La Garza v. Kandiyohi Cty. Jail, Corr. Inst.*, 18 F. App'x 436, 437 (8th Cir. 2001) (citing cases); *Campbell v. Hennepin Cty. Sheriffs*, No. 19-CV-1348 (DWF/ECW), 2020 WL 589547, at *7 (D. Minn. Jan. 21, 2020) (collecting cases), *R. & R. adopted*, 2020 WL 586770 (D. Minn. Feb. 6, 2020). Indeed, under Minnesota law, only a county itself—and not its agencies—has the power to "sue

---

[5] The Court specifically warned Colvin about this problem in an earlier order. *See* Order 9, ECF No. 11 (April 2020 Order).

[6] The April 2020 Order also specifically warned Colvin about problems with naming these entities as Defendants. *See id.* at 5–6.

and be sued." Minn. Stat. § 373.01, subd. 1(a)(1); *see also Campbell*, 2020 WL 589547, at *6 (citing statute). As a result, the Court recommends the dismissal of the HCAO and HCCPS. The Court will instead construe Colvin's relevant constitutional-law claims as being against Hennepin County itself.

A similar point applies with respect to the PPD. Entities that are "simply departments or subdivisions" of a city's government are not themselves "juridical entities suable as such." *Ketchum v. City of W. Memphis*, 974 F.2d 81, 82 (8th Cir. 1992); *see also Campbell*, 2020 WL 589547, at *6 (quoting cases, including *Ketchum*). The proper entity to sue is simply the city itself. As a result, the Court recommends the dismissal of the PPD but will construe the claims against it as directed to the City of Plymouth.

### E.   Capacity Pleading and Official-Capacity Claims

As the Court indicated in the April 2020 Order, the Complaint does not indicate the capacity in which Colvin means to sue the various individual Defendants. *See* Apr. 2020 Order 5. One can bring a § 1983 claim against a person in his individual capacity, official capacity, or both. *See, e.g.*, *Baker v. Chisom*, 501 F.3d 920, 923 (8th Cir. 2007) (discussing capacity distinction). That choice affects both the relief to which a plaintiff may be entitled and how the relevant defendants should be served with process. *See id.*; Fed. R. Civ. P. 4. As a result, the Court must determine the capacity in which Colvin seeks to sue the individual Defendants.

The U.S. Court of Appeals for the Eighth Circuit has established that when a complaint does not indicate the capacity in which a plaintiff sues an individual defendant, a court should treat the complaint as bringing only official-capacity claims. *See, e.g.*,

12

*Baker*, 501 F.3d at 923 (citing cases); *Spencer v. Brott*, No. 17-CV-5035 (DSD/TNL), 2019 WL 6884775, at *4 (D. Minn. Nov. 21, 2019) (citing cases), *R. & R. adopted*, 2019 WL 6874657 (D. Minn. Dec. 17, 2019).  As a result, the Court construes Colvin as pressing only official-capacity claims against the individual defendants.  Given that any claims Colvin has against Hennepin County and the City of Plymouth must also be official-capacity claims, the Complaint rises and falls with whether or not Colvin has successfully pleaded an official-capacity claim of some sort.

To bring an official-capacity claim under § 1983, a plaintiff must allege that the relevant municipal entity itself caused the relevant constitutional violation.  *See, e.g.*, *Brewington v. Keener*, 902 F.3d 796, 801–02 (8th Cir. 2018) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)); *Calhoun v. Washington Cty. Cmty. Servs. Child Support Unit*, No. 18-CV-1881 (ECT/HB), 2019 WL 2079834, at *4 (D. Minn. Apr. 23, 2019) (citing *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997)), *R. & R. adopted*, 2019 WL 2075870 (D. Minn. May 10, 2019).  A municipal entity's liability can result from "(1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise."  *Jackson v. Stair*, 944 F.3d 704, 709 (8th Cir. 2019) (citing *Corwin v. City of Independence*, 829 F.3d 695, 699 (8th Cir. 2016)); *see also Calhoun*, 2019 WL 2079834, at *4 (same point (quoting *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1214 (8th Cir. 2013)).

Numerous cases explain how to allege a relevant policy, custom, or failure to train, but the Court need not delve deeply into that precedent here.  With one exception addressed below, the Complaint says nothing about any relevant policy, custom, or

failure to train. As a result, the Complaint fails to adequately state any official-capacity claims, and therefore fails to adequately state any § 1983 claims.

The only possible exception is Colvin's suggestion that the City of Plymouth failed to train Colvin in how to follow and enforce Minn. Stat. § 260C.175. *See* Compl. 7–8. To the extent the Court can understand the claim, Colvin seems to argue that (1) when children are taken from a parent under Minn. Stat. § 260C.175(1), the relevant parent can request to have the children "placed in the care of a family friend"; (2) Colvin made this request to Gerard when he removed her children from her care; (3) Gerard did not comply with this request, leading to Colvin's children being placed in a shelter care facility; and (4) Gerard's failure to comply with Colvin's request resulted from a failure to train him properly.

But this argument misfires. At a minimum, Colvin's argument is based on a misunderstanding of the relevant law. Under Minn. Stat. § 260C.175, subd. 1(2)(ii), a peace officer can take a child "into immediate custody" if the officer finds the child "is found in surroundings or conditions which endanger the child's health or welfare or which such peace officer reasonably believes will endanger the child's health or welfare." Subdivision 2 then states that "[w]henever a peace officer takes a child into custody for shelter care or relative placement pursuant to subdivision 1, . . . the officer shall notify the parent or custodian that under [Minn. Stat. § 260C.181, subd. 2], the parent or custodian may request that the child be placed with a relative or a designated caregiver under chapter 257A instead of in a shelter care facility."

14

For its part, Minn. Stat. § 260C.181, subd. 2 states that when a child is taken into custody under § 260C.175, subd. 1, "the child shall be detained in the least restrictive setting consistent with the child's health and welfare and in closest proximity to the child's family as possible." And specifically, "[p]lacement may be with a child's relative, a designated caregiver under chapter 257A, or in a shelter care facility." Section 260C.181 states that "[t]he placing officer shall comply with this section and shall document why a less restrictive setting will or will not be in the best interests of the child for placement purposes."

The result of all this is that Minnesota law does not require a peace officer who takes children into custody under § 260C.175, subd. 1, to take the children to whomever the parent requests. There does appear to be a requirement that, within 24 hours of being taken into custody, a child be placed "in closest proximity to the child's family as possible," and placement can be done with "a child's relative" or "a designated caregiver under chapter 257A." But the Court finds nothing in the statutory scheme to suggest that Minn. Stat. § 260C.175 gave her the right to dictate to Gerard that her children be placed "with a family friend."

As a result, Colvin's Complaint fails to allege plausibly that there was any "failure to train" Gerard with how to comply with § 260C.175. Furthermore, Colvin also fails to adequately explain how any alleged failure to train here led to the deprivation of her constitutional rights. Indeed, Colvin's real complaint here appears to be with the content of the law itself. As a result, the Court recommends dismissing without prejudice

15

Colvin's failure-to-train claim against the City of Plymouth insofar as it is based on a purported failure to train Gerard on how to enforce Minn. Stat. § 260C.175.

### F.     Remaining State-Law Claims and IFP Application

After the dismissal of Colvin's international-law claims and § 1983 constitutional-law claims, what remains are simply Colvin's claims that Defendants violated various Minnesota statutes (or Minnesota common-law causes of action) with respect to handling matters involving custody of her children. Standing alone, however, these state-law claims alone cannot give this federal court jurisdiction over Colvin's suit. *See, e.g.*, *Parkview Homes, LLC v. City of Lexington*, No. 15-CV-3692 (SRN/BRT), 2017 WL 758573, at *5 (D. Minn. Feb. 27, 2017) ("[A] court may decline to exercise supplemental jurisdiction where it 'has dismissed all claims over which it has original jurisdiction.' . . . 'In the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine will point toward declining to exercise jurisdiction over the remaining state-law claims.' ") (quoting 28 U.S.C. § 1367(c)(3); *Wilson v. Miller*, 821 F.3d 963, 970–71 (8th Cir. 2016)).[7] Having recommended dismissal of all claims over which the Court has original jurisdiction, the Court further recommends declining any exercise of supplemental jurisdiction over Colvin's remaining state-law claims.

As this result leads to the complete dismissal of this action, the Court further recommends that the IFP Application be denied as moot.

---

[7] Diversity jurisdiction does not exist here, for all the parties appear to be citizens of Minnesota.

### III. RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT:**

1. Within Plaintiff Brenda Colvin's filing titled "Petition," ECF No. 1 (the "Complaint"), all claims based on international-law sources be **DISMISSED with prejudice;**

2. Colvin's claims against Defendants Michael K. Browne and DeChristopher Granger be **DISMISSED without prejudice** for failure to state a claim, and Browne and Granger be **DISMISSED** from this action;

3. Defendants Hennepin County Attorney's Office, Hennepin County Child Protective Services, and Plymouth Police Department be **DISMISSED** from this action;

4. Colvin's remaining § 1983 claims as against Hennepin County and the City of Plymouth be **DISMISSED without prejudice** for failure to state a claim;

5. The Court decline to exercise supplemental jurisdiction over any remaining state-law claims in the Complaint;

6. This action be **DISMISSED**;

7. Colvin's IFP Application, ECF No. 2, be **DENIED AS MOOT**; and

8. Judgment be entered accordingly.

Dated: July 15, 2020      s/ *Hildy Bowbeer*
                          Hildy Bowbeer
                          United States Magistrate Judge


**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written

objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).